Kent, Ch. J.
The first question arising upon this
case is, who is seized in fee of the locus in quo ?■ Does it reside in the inhabitants'of Gravesend, or in Turnbull, the defendant ? By the agreement of 1670 it was evidently intended to convey the fee of the neclc to Brown. It is stated to be a final agreement or determination, concerning certain parcels of land lately in controversy between the parties, and the order of governor Lovelace of the preceding year stated that the title to the neck was one of the subjects of controversy. The agreement declares that the said parcels of land shall be owned and held by each party, as thereafter mentioned, and to their heirs, successors and assigns, as their proper right; and in the 7th and 8th articles it is declared to be agreed that Broivn should have all the neck of land with the timber and herbage, and that the inhabitants of Gravesend should have free egress and regress over the same. The intention here is manifest, to vest the fee in Broivn, and to reserve a right of way to the inhabitants. Considering the antiquity of the instrument, and that the defendant, Turn-bull, and those under whom he claims by a regular deduction of title from Brown, for a period of time as remote as the memory of witnesses can reach, have exercised constant and exclusive ownership over the neck in question, the agreement ought at this day to be most liberally expounded, so as to give effect to the intention. The agreement purports to be signed by sundry persons, and the inhabitants of Gravesend cannot be permitted to say that those were not persons competent to convey the neck; for, afterwards, in the same year, 1670, they accepted from governor Lovelace a confirmation of their *322 patent, which patent of confirmation expressly allows- ¿ confjrms the agreement. The inhabitants of Graves-end áre therefore to bo considered as regular parties to the agl'eeraent > and as il: was accompanied by a delivery of possession, (for so we are to intend, as the possession hath been uninterruptedly enjoyed and continued down,) the people of Gravesend are concluded from disputing the title of the opposite party. Admitting the writer to be deficient in the apt terms requisite to pass a fee, the agreement ought to bind the inhabitants, especially after such a lapse of time accompanied by so long an acquiescence. Art arbitration bond and award cannot have the operation of conveying land; but a party, by his agreement in that way, has been held to conclude himself from disputing the title. (Doe v. Rosser, 3 East, 15.) This is going much further than the present case requires. We need only say, that if one par.ty agrees in waiting with another that he shall own and hold a piece of land fp him and his heirs, and he delivers him the possession, and that possession is held and enjoyed for a time beyond the memory of man, in such a case, we will not search curiously for technical terms, but will hold the party concluded, by his agreement and subsequent acts, from disputing the title.(a.)
The next point in the case is, whether the sea-weed thrown by the sea upon the shore or beach of the neck, did thereby vest in the owner of the soil, or belong to the first occupant ? The plaintiff's right, if any, rested upon occupancy; for the liberty of egress and regress, and of fishing and fowling, reserved to the inhabitants of Graves-end by the agreement of 1670, gave them no other rights than those expressed. They could not take wood, grass, or any thing appurtenant to the ownership of the soil. — - *323 The plaintiff then had no right to the sea-weed, because he was an inhabitant of Gravesend. Any stranger would have had an equal right to take it.
The sea-weed thus thrown up by the sea, may be considered as one of tho.se marine increases arising by slow degrees; and according to the rule of the common law, it belongs to the owner of the soil. The rule is, that if the marine increase be by small and almost imperceptible degrees, it goes to the owner of the land; but if it be sudden and considerable, it belongs to the sovereign.— (2 Blacks. Coms. 261. Harg. Law Tracts, 28.) The seaweed must be supposed to have accumulated gradually. -The slow increase, and its usefulness as a manure, and as a protection to the bank will, upon every just andequi-table principle, vest the property of the weed in the owner of the land. It forms a reasonable compensation to him for the gradual encroachments of the sea, to which other parts of his estate may be exposed; this is one sound reason for vesting these maritime increments in the proprietor of the shore. Theyws alluvionis ought, in this respect, to receive a liberal encouragement in favour of private right. I am of opinion, therefore, that the motion for a new trial ought to be denied.
Thompson, J. concurred.
Spencer, J. not havingjheard the argument in the pause, gave no opinion.
Judgment fop the defendants.

 Thus the law invariably regards possession with an indulgent eye, A deed may ever be presumed after a length of time and possession.— Arthur v. Arthur, 2 Nott. & M'C. 96.